Filed 2/17/21  P. v. Prentice CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C091034 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE024229) |
| v. | |
| DANTE PRENTICE, | |
| Defendant and Appellant. | |

After the preliminary hearing and the magistrate's denial of his motion to suppress evidence, defendant Dante Prentice pleaded no contest to one count of possession of a firearm by a felon and admitted one strike prior as well as a gang enhancement allegation. The trial court sentenced defendant to an aggregate term of seven years in state prison. Defendant appeals from the denial of his motion to suppress evidence.  The People contend we must dismiss defendant's appeal because he did not preserve his right to

1

appeal by renewing his motion to suppress in the superior court after the preliminary hearing.  We agree and shall dismiss the appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)).[1]  It was further alleged he committed the charged offense for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)).  It was also alleged that defendant had previously been convicted of two serious and/or violent felonies, that is, strikes (§§ 667, subds. (b)-(i), 1170.12).  Defendant entered a plea of not guilty and denied the enhancements.  Prior to the preliminary hearing, defendant moved to suppress evidence discovered in a warrantless search pursuant to section 1538.5.

The detectives who conducted the search testified at the hearing on the motion to suppress evidence before a judge sitting as a magistrate for the preliminary hearing.  On the evening of December 18, 2018, Detective Brandon Gayman, who is assigned to the north gang suppression unit, went to the area of Howe Avenue and Edison Avenue.  Detective Gayman was familiar with this area and knew it is associated with the Trigga Mob.  Trigga Mob is an affiliate of G-MOBB.  During this time, there was an ongoing conflict between G-MOBB and its affiliates and the Oak Park Bloods and its affiliates.  Detective Gayman testified that earlier in the day, he had "received information that there was a stolen vehicle around the area of Edison and Truax, which is about half a block from Edison and Howe, and information that the subject of that vehicle was armed" with a firearm.  The suspect was allegedly associated with Trigga Mob.

At the intersection of Howe Avenue and Edison Avenue, Detective Gayman saw a gold Ford Taurus driving through the intersection and noticed that the vehicle's

---

[1]  Further undesignated statutory references are to the Penal Code.

registration tags were expired. Detective Gayman's partner, Detective Nick Sareeram, conducted a search on the patrol car's computer and discovered that the Taurus's registration had expired in April of that year. Driving a vehicle with expired registration is a violation of Vehicle Code section 4000, subdivision (a)(1), so the detectives conducted an enforcement stop of the Taurus. The sole occupant of the car was its driver, defendant. When asked to provide his driver's license, defendant handed Detective Gayman "a California identification card and stated that he had never been issued a driver's license." Following a records check, Detective Gayman learned that defendant had previously been arrested for possession of a firearm by a felon and assault on a peace officer and was previously validated as a member of G-MOBB.

Detective Gayman asked defendant if he had anything illegal in the car; defendant said "there was marijuana within the vehicle and stated he believed it to be less than an ounce." The detective said this was significant because, "Per Vehicle Code [section] 23222 [subdivision] (b), it states that not only can you not transport more than one ounce of marijuana in your vehicle but it also must be in a sealed container."

When asked if he had any weapons, defendant replied that he did not. Detective Gayman asked defendant if he could search the Taurus, and defendant "gave [him] consent to search the vehicle." The detective said he wanted to search the car based on defendant's admission that "he had the marijuana within the vehicle. So that would be a further search to determine whether or not he was within the statutory limitations under that law, as well as to confirm his statement that he did not have any weapons within the vehicle." Detective Gayman testified that he was concerned that there might be a firearm in the car because "Gang members are often armed as [they] travel about, especially in areas that are known for gang violence."

Detective Gayman described what happened next as follows: "[Defendant] was stepping out of the vehicle at that time. As he stepped out of the vehicle, he kept his back to me. In order to continue to somewhat restrict his movements away -- as we moved

3

away from the vehicle, I placed my open hand on his back. At that time he quickly pushed his right front shoulder forward and partially away from me and stated that he was not giving me permission to search him." Defendant then "placed his hands open and kind of away from his body and above his waist. He stated that he was not giving [the detective] permission to search him." Defendant told Detective Gayman that he had marijuana in his jacket pocket. Defendant said: "I told you you could search the car, you can tow the car. I told you you can have the marijuana, but you can't search me." The detective proceeded to "pat[] down the outside of the jacket pocket to confirm that it was actually a substance consistent with marijuana before [he] stuck [his] hand within that pocket." Defendant then "made a jerking motion and pulled away from [Detective Gayman] and kind of stepped away." Detective Sareeram testified that defendant "raised his arms in the air and took a couple of steps back from Detective Gayman which, obviously, heightened my awareness and made me curious as to why that was happening." He further testified that the behavior was concerning to him: "It was a combination of everything. The movements were what made me think he was going to run away. But it was also knowing in the back of my mind the prior arrest history, the fact that we're in an area that G-MOBB gang members are contacted in possession of firearms and this person had the arrest history for not only the firearm but for assault with a deadly weapon on a police officer."

Detective Gayman then "took control of [defendant]'s right hand." The two detectives placed handcuffs on defendant. Detective Gayman testified that he developed a suspicion that defendant had a firearm on his person: "Based upon his prior history for possessing firearms as well as being a validated gang member within that area and I felt like the conversation that we had within the vehicle as well as his admission of having marijuana in the car was very fluid and honest. And so as that encounter unfolded, I felt that he was being dishonest at that point and he was attempting to hide what I believed was a firearm on him." Detective Gayman "took the marijuana out of [defendant's] right

4

jacket pocket at that point and conducted a further search of the right side of his body." He testified that the quantity of marijuana appeared to be more than one ounce. As Detective Sareeram held defendant's left arm, he noticed that defendant's left front pants pocket had a bulge, and he "could tell there were contents inside the pocket." As the detective "look[ed] down into the pocket, yes, [he] could see the handle or the grip of a handgun." After patting down the pants pocket, Detective Sareeram removed a loaded .40-caliber Sig Sauer pistol. Detective Gayman estimated that the encounter outside of the car "all unfolded within a minute."

The magistrate denied defendant's motion to suppress evidence, reasoning as follows: "[T]here were specific and articulable facts demonstrating that there was cause to believe, reasonable suspicion to believe that there was criminal activity. That determination by this court is taking into consideration both the totality of the circumstances as reflected through today's testimony, as well as what the officers describe they had knowledge of at the time that they were interacting with [defendant]." The court found that due to the officers' interactions with defendant, their knowledge about his prior history and gang membership, their knowledge that defendant was a validated member of a gang active in the neighborhood of the stop, and defendant's "furtive movements" after he exited the car, there were "specific and articulable facts giving rise to a reasonable suspicion of criminal activity" and a heightened concern for officer safety.

Without filing a renewed suppression motion, defendant pleaded no contest to one count of possession of a firearm by a felon and admitted one strike prior as well as a gang enhancement allegation. It was agreed that defendant's sentence would not exceed seven years in state prison. During the plea hearing, the trial court stated: "I know we had a conversation with your attorney prior to this plea. There's at least some issue with the stop and search. That survives this plea. You have a right to appeal that under [section] 1538, even after sentencing. So if that survives you can litigate that."

5

Subsequently, the trial court sentenced defendant to an aggregate term of seven years, as follows:  the middle term of four years (two years doubled for the strike) plus three years, consecutive, for the gang enhancement.  Defendant timely appealed.  His notice of appeal purported to seek review of the denial of his motion to suppress under section 1538.5.  He did not request or obtain a certificate of probable cause.

## DISCUSSION

Defendant contends that the trial court erred in denying his motion to suppress the evidence because the search of his person was unlawful.  We must first determine whether the ruling is reviewable.  The People contend the appeal must be dismissed because after an adverse ruling on his motion to suppress at the preliminary hearing, he failed to "raise the search and seizure issue before the superior court by a motion to dismiss under section 995 or in a special hearing under section 1538.5 to preserve the issue for appellate review."  We agree.

To appeal from a judgment of conviction predicated on a plea of guilty or no contest, a defendant is generally required to obtain a certificate of probable cause from the trial court.  (See *People v. Mendez* (1999) 19 Cal.4th 1084, 1088; § 1237.5 [requiring the defendant to file a written statement with the trial court setting forth reasonable grounds for challenging the legality of the proceedings, including the validity of a plea, and obtaining a certificate of probable cause from the court as to those certified issues]; Cal. Rules of Court, rule 8.308(a) ["any statement required by . . . section 1237.5 must be filed within 60 days after the rendition of the judgment or the making of the order being appealed"];[2] rule 8.304(b)(1).)  Absent full compliance with the provisions of section 1237.5, an appeal is not operative and must be dismissed.  (Rule 8.304(b)(3); *Mendez*, at

---

[2]  Further rule references are to the California Rules of Court.

6

p. 1098 [the requirement of obtaining a certificate of probable cause cannot be waived by the court].)

A statutory exception exists to the certificate of probable cause requirement: when a defendant challenges the reasonableness of a search or seizure in his criminal case, appellate review may be obtained so long as "at some stage of the proceedings prior to conviction he or she has moved for the return of property or the suppression of the evidence." (§ 1538.5, subd. (m); see rule 8.304(b)(4)(A).) This is so even when "the judgment of conviction is predicated upon a plea of guilty." (§ 1538.5, subd. (m).) It is true that in this case, defendant challenged the validity of evidence obtained by search and seizure "at some stage" prior to his conviction, namely, at the preliminary hearing. However, our analysis does not end there. Our high court has interpreted section 1538.5 to require the defendant to raise or renew a motion to suppress evidence in the superior court to preserve the issue for review on appeal. (*People v. Lilienthal* (1978) 22 Cal.3d 891, 896 (*Lilienthal*).)

In *Lilienthal*, a defendant moved to suppress evidence at his preliminary examination that was obtained from a traffic stop following a warrantless search by the police. (*Lilienthal, supra*, 22 Cal.3d at p. 895.) Following the denial of his suppression motion, the defendant pleaded guilty to one drug offense, the remaining charges were dismissed, and the court sentenced the defendant to probation. (*Ibid.*) The defendant appealed from his judgment of conviction and sought review on his search and seizure motion only. (*Ibid.*) The court held that a defendant does not satisfy the requirements of section 1538.5 by moving to suppress evidence at the preliminary examination alone, because "it would be wholly inappropriate to reverse a superior court's judgment for error it did not commit and that was never called to its attention." (*Lilienthal,* at p. 896, fn. omitted.) As this court has explained, " '[m]agistrates presiding at preliminary hearings do not sit as judges of courts, and exercise none of the powers of judges in court proceedings.' " (*People v. Richardson* (2007) 156 Cal.App.4th 574, 584.) "Only if the

defendant raised the search and seizure issue *in the superior court*—i.e., at some point *after* the preliminary proceedings before the magistrate—could the defendant be deemed to have raised that issue 'at some stage of the proceedings prior to conviction' as required for appellate review of the issue under section 1538.5 [subdivision] (m)." (*Id.* at pp. 584-585.)

We conclude that *Lilienthal* is applicable in this case despite the trial court's comment during the plea hearing that defendant would be able to seek review of the suppression motion. Defendant argues that the trial court's comment was sufficient to preserve his right to appeal from the denial of the suppression motion. While the trial court correctly observed that defendant could obtain appellate review of his suppression motion despite his plea, it is unclear from the record whether the court was aware that defendant had not renewed his suppression motion and preserved his rights. Defendant contends we can presume the trial court considered his suppression motion and deemed the motion raised and rejected. Not so. The court's comment is not the equivalent to a ruling on a renewed motion. Indeed, defendant could not have reasonably relied on the court's comments about his appellate rights as a ruling on a renewed motion because he never renewed the motion before the superior court. Defendant presents us with no authority that would allow us to decide this claim on the merits when he made no effort to preserve the issue for appeal. Accordingly, we are bound by *Lilienthal* and conclude that defendant forfeited his right to appellate review of the search and seizure matter when he did not renew his motion to suppress in the superior court at some point after his preliminary hearing.

## DISPOSITION

The appeal is dismissed.

/s/
HOCH, J.

We concur:


/s/
BLEASE, Acting P. J.


/s/
MAURO, J.